GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL SANCHEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>CENTENE CORP., MICHAEL F. NEIDORFF, and JEFFREY A. SCHWANEKE,<br><br>                   Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Israel Sanchez ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Centene Corp. ("Centene" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Centene; and (c) review of other publicly available information concerning Centene.

## <u>NATURE OF THE ACTION AND OVERVIEW</u>

1.      This is a class action on behalf of persons and entities that acquired Centene securities between April 26, 2016, and September 6, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Centene provides health plans in over twenty states through Medicaid, Medicare, and the Health Insurance Marketplace.

3.      On March 24, 2016, the Company completed the acquisition of Health Net, Inc. ("Health Net") for approximately $6 billion, including the assumption of debt. The acquisition was accounted for as a business combination, which requires that assets acquired and liabilities assumed be recognized at their fair values as of the acquisition date.

4.      Accordingly, on May 10, 2016, Centene provided financial information to investors concerning the completed acquisition of Health Net. Therein, the Company incorrectly accounted for Health Net's underperforming health plans, including by understating certain reserves to account for losses in California, Arizona and Oregon.

---

[1] "Defendants" refers collectively to Centene, Michael F. Neidorff, and Jeffrey A. Schwaneke.

5.     Indeed, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that certain Health Net insurance programs were significantly underperforming; (2) that Health Net's insurance plans were generating material losses; (3) that Centene had overstated Health Net's financial prospects; and, (4) that, as a result of the foregoing, Defendants' statements about Centene's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District as Health Net's principal executive offices are located within this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate

commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff Israel Sanchez, as set forth in the accompanying certification, incorporated by reference herein, purchased Centene securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Centene Corp. is a Delaware corporation with its principal executive offices located St. Louis, Missouri.  Centene's shares trade on the New York Stock Exchange ("NYSE") under the symbol "CNC."

13.    Defendant Michael F. Neidorff ("Neidorff") was, at all relevant times, the Chief Executive Officer ("CEO") of Centene.

14.    Defendant Jeffrey A. Schwaneke ("Schwaneke") was, at all relevant times, the Chief Financial Officer ("CFO") of Centene.

15.    Defendants Neidorff and Schwaneke are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Centene's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the

result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Centene provides health plans in over twenty states through Medicaid, Medicare, and the Health Insurance Marketplace. The Company completed the acquisition of Health Net in March of 2016 for approximately $6 billion.

### Materially False and Misleading Statements Issued During the Class Period

17.     The Class Period begins on April 26, 2016, on that day the Company published a press release announcing first quarter 2016 results, and provided 2016 guidance of revenues of $39.8 billion at the high end. For the first quarter 2016, the Company announced a diluted net loss per share of $0.13 on revenues of $6.9 billion.

18.     In the Company's April 26, 2016 press release, Defendant Neidorff noted the transformational nature of the Health Net transaction, stating in relevant part:

> We are pleased to have closed the Health Net transaction, as expected, in the first quarter.  This acquisition is transformational -- building on our critical mass and new products and capabilities that will enhance the sustainability of our long-term growth.  The integration process is proceeding as planned and we look forward to continued success in 2016 and beyond.

19.     On April 26, 2016, the Company filed with the SEC its quarterly report on Form 10Q, and reiterated the financial results previously stated in the April 26, 2016 press release.

20.     On May 10, 2016, Centene filed a report with the SEC, therein the

Company provided pro forma financial information for Centene and Health Net for the year ended December 31, 2015, including the following purchase price allocation for the Health Net transaction:

**Assets Acquired and Liabilities Assumed:**

| | |
|---|---|
| Cash and cash equivalents | $ 1,422 |
| Premium and related receivables [a] | 1,076 |
| Short term investments | 40 |
| Other current assets | 670 |
| Long term investments | 1,965 |
| Restricted deposits | 36 |
| Property, software and equipment, net | 43 |
| Intangible assets [b] | 1,500 |
| Other long term assets | 203 |
| Total assets acquired | 6,955 |
| | |
| Medical claims liability | 1,370 |
| Borrowings under revolving credit facility | 285 |
| Accounts payable and accrued expenses | 1,928 |
| Return of premium payable | 375 |
| Unearned revenue | 117 |
| Long term deferred tax liabilities [c] | 415 |
| Long term debt [d] | 418 |
| Other long term liabilities | 369 |
| Total liabilities assumed | 5,277 |
| | |
| Total identifiable net assets | 1,678 |
| Goodwill [e] | 3,601 |
| Total assets acquired and liabilities assumed | $ 5,279 |

21. And Centene also provided the following consolidated pro forma performance of Centene and Health Net information:

**Unaudited Pro Forma Condensed Combined Statement of Operations**
**For the Year Ended December 31, 2015**
**(In millions, except share data)**

| | Centene | Health Net | Pro Forma Adjustments (Note 6) | Pro Forma Combined |
|---|---|---|---|---|
| **Revenues:** | | | | |
| Premium | $ 19,389 | $ 15,553 | $ (346) (i) | $ 34,596 |
| Service | 1,876 | 629 | — | 2,505 |
| Premium and service revenues | 21,265 | 16,182 | (346) | 37,101 |

| | | | | | |
|---|---:|---:|---:|---|---:|
| Premium tax and health insurer fee | 1,495 | — | 346 | (i) | 1,841 |
| Total revenues | 22,760 | 16,182 | — | | 38,942 |
| **Expenses:** | | | | | |
| Medical costs | 17,242 | 13,041 | 63 | (i) | 30,346 |
| Cost of services | 1,621 | 604 | — | | 2,225 |
| General and administrative expenses | 1,826 | 2,109 | (216) | (b), (e), (f), (i), (j) | 3,719 |
| Premium tax expense | 1,151 | — | 267 | (i) | 1,418 |
| Health insurer fee expense | 215 | — | 233 | (i) | 448 |
| Asset impairment | — | 2 | — | | 2 |
| Total operating expenses | 22,055 | 15,756 | 347 | | 38,158 |
| Earnings from operations | 705 | 426 | (347) | | 784 |
| **Other income (expense):** | | | | | |
| Investment and other income | 35 | 62 | (4) | (a) | 93 |
| Interest expense | (43) | (33) | (126) | (c), (d) | (202) |
| Earnings from continuing operations, before income tax expense | 697 | 455 | (477) | | 675 |
| Income tax expense (benefit) | 339 | 269 | (152) | (g) | 456 |
| Earnings from continuing operations, net of income tax expense | 358 | 186 | (325) | | 219 |
| scontinued operations, net of income tax expense (benefit) | (1) | — | — | | (1) |
| Net earnings | 357 | 186 | (325) | | 218 |
| arnings) loss attributable to noncontrolling interests | (2) | — | — | | (2) |
| **Net earnings attributable to common stockholders** | $ 355 | $ 186 | $ (325) | | $ 216 |
| | | | | | |
| mounts attributable to common stockholders: | | | | | |
| Earnings from continuing operations, net of income tax expense | 356 | 186 | (325 | | 217 |
| Discontinued operations, net of income tax expense (benefit) | (1 | — | — | | (1 |
| Net earnings | 355 | 186 | (325 | | 216 |
| | | | | | |
| et earnings per common share: | | | | | |
| Basic: | | | | | |
| Continuing operations | $ 2.99 | $ 2.40 | | | $ 1.30 |
| Discontinued operations | (0.01) | — | | | (0.01) |
| Basic earnings per common share | $ 2.98 | $ 2.40 | | | $ 1.29 |
| | | | | | |
| Diluted: | | | | | |
| Continuing operations | $ 2.89 | $ 2.37 | | | $ 1.26 |
| Discontinued operations | (0.01) | — | | | (0.01) |
| Diluted earnings per common share | $ 2.88 | $ 2.37 | | | $ 1.25 |
| | | | | | |
| eighted average number of common stock outstanding: | | | | | |
| Basic | 119,100,744 | 77,212,351 | (28,762,907) | (h) | 167,550,188 |

| Diluted | 123,066,370 | 78,358,471 | (29,266,191) (h) | 172,158,650 |

22.     The above statements contained in ¶¶17-21 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that certain Health Net insurance programs were significantly underperforming; (2) that Health Net's insurance plans were generating material losses; (3) that Centene had overstated Health Net's financial prospects; and, (4) that, as a result of the foregoing, Defendants' statements about Centene's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

23.     On July 26, 2016, the Company filed a report with the SEC on Form 8K, stating that it was reserving approximately $300 million for losses associated with Health Net's insurance plan. The Company stated in relevant part:

> In connection with the Company's second quarter 2016 earnings conference call on July 26, 2016, the Company discussed the fair value of the premium deficiency reserve of approximately $300 million recorded in connection with the Health Net acquisition. The fair value of the premium deficiency reserve is comprised of the following:
>
> • $125 million associated with the California commercial business. $50 million of which is associated with substance abuse treatment facilities. We have filed for a combination of price increases and benefit design changes including reductions in reimbursement for out of network services. We are in the final stages of approval with the California Department of Insurance, which will be concluded by the end of the third quarter of 2016.
>
> • $70 million associated with the Arizona individual commercial business. We will exit the entire individual PPO business, effective January 1, 2017. We are reducing our participation in the health insurance marketplace business to one county for 2017 and have taken significant rate actions.
>
> • $70 million associated with the Medicare business. The 2017 bids have been submitted and should return the business to profitability in 2017.

- $15 million associated with the Arizona Medicaid business. We have fully transitioned this business to Centene's operating platform as of July 1, 2016, and we have taken appropriate actions to improve performance.

- $20 million of other smaller items including the Arizona small group and Oregon individual business. We have filed for rate increases and taken other appropriate actions to address these for 2017.

24. On this news, Centene's shares price fell $6.39 per share, or over 8%, to close at $68.87 per share on July 26, 2016, on unusually heavy trading volume.

25. Then on September 6, 2016, during the middle of the trading session, Leerink Partners, LLC ("Leerink") issued a report downgrading Centene stock due to underperformance of the Health Net legacy insurance programs, including Health Net's California substance abuse programs. The Leerink report stated in relevant part:

> We are downgrading CNC from OP to MP while maintaining our PT at $80. Our downgrade is predicated on our view of below consensus EPS achievability in 2017 where we are lowering our EPS estimate by an incremental 9c to $4.56, below consensus of $4.87. Our 2017E EPS achievability already contemplated the downside of the HNT [Health Net] CA PPO substance abuse reimbursement issues in 2017. Our EPS lowering in 2017E by an incremental 9c further contemplates a midsingle- digit negative margin on the recently awarded MLTSS contract for the State of PA. Our recent discussions with senior Medicaid executives on our SoCal bus tour on Aug. 31 further diminish our confidence on the profitability of this contract both near and medium term.

> • **Downgrading CNC to MP while maintaining PT at $80.** Our downgrade is predicated on our view of below consensus EPS achievability in 2017E with our EPS of $4.56 lowered incrementally by 9c, with consensus at $4.87. Margins in the core Medicaid business look to have peaked and the pressures from (a) HNT Substance abuse pressures in CA, (b) the start-up and likely continuing losses in the PA contract, and (c) potentially from phase out of 2Rs and exits in HIX in 2017 are likely to drive margin compression in the overall book

26.     On this news the Company's shares fell $3.32 per share, or 5%, to close on September 6, 2016 at $65.30.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Centene securities between April 26, 2016, and September 6, 2016, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Centene's sharess actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Centene shares were traded publicly during the Class Period on the NYSE.  As of October 14, 2016, the Company had 170,892,049 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Centene or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Centene; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

33.     The market for Centene's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Centene's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Centene's securities relying upon the integrity of the market price of the Company's securities and market information relating to Centene, and have been damaged thereby.

34.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Centene's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The

statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Centene's business, operations, and prospects as alleged herein.

35.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Centene's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

36.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

37.    During the Class Period, Plaintiff and the Class purchased Centene's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

38.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements

or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Centene, his/her control over, and/or receipt and/or modification of Centene's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Centene, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

39.     The market for Centene's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Centene's securities traded at artificially inflated prices during the Class Period.  On July 22, 2016, the Company's shares price closed at a Class Period high of $75.39 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Centene's securities and market information relating to Centene, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of Centene's share price was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Centene's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Centene and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the

value of the Company share price. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41.　At all relevant times, the market for Centene's securities was an efficient market for the following reasons, among others:

(a)　Centene sharess met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)　As a regulated issuer, Centene filed periodic public reports with the SEC and/or the NYSE;

(c)　Centene regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)　Centene was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42.　As a result of the foregoing, the market for Centene's securities promptly digested current information regarding Centene from all publicly available sources and reflected such information in Centene's shares price. Under these circumstances, all purchasers of Centene's securities during the Class Period suffered similar injury through their purchase of Centene's securities at artificially inflated prices and a presumption of reliance applies.

43.　A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United*

*States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **<u>NO SAFE HARBOR</u>**

44.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Centene who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Centene's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Centene's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Centene's financial well-being and prospects, as specified herein.

49.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Centene's value and performance and continued substantial growth, which included

the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Centene and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

50.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

51.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Centene's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by

Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Centene's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Centene's securities during the Class Period at artificially high prices and were damaged thereby.

53.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Centene was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Centene securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

54.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.    As a direct and proximate result of Defendants' wrongful conduct,

Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Centene within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.   The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.     As set forth above, Centene and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual

Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:  November 14, 2016          **GLANCY PRONGAY & MURRAY LLP**

By:  s/ *Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
rprongay@glancylaw.com

*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

### CENTENE CORP. SECURITIES LITIGATION

I, Israel Sanchez individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.  I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase Centene Corp. the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Centene Corp. during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not served as a representative party on behalf of a class under this title during the last
    three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

11/11/16
_____
Date

_____
Israel Sanchez

**Israel Sanchez's Transactions in Centene Corp. (CNC)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 06/07/2016 | Bought | 65 | $66.6800 |